IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JEFFEREY STOUDMIRE,
       Petitioner,

vs.                             Case No. 3:09cv48/MCR/EMT

KENNETH S. TUCKER,[1]
       Respondent.
_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1). Respondent filed an answer and relevant portions of the state court record (doc. 19). Petitioner filed a reply (doc. 24).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.       BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 19, Exhibits).[2] Petitioner was charged in the Circuit Court in and for Okaloosa

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss, who succeeded Walter A. McNeil, as Secretary for the Department of Corrections. Secretary Tucker is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (doc. 19). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

County, Florida, with one count of aggravated battery with great bodily harm and during which he discharged a firearm, in relation to the shooting of Roger Price on August 4, 2002 (Ex. A at 6). Following a jury trial on February 2–3, 2004, Petitioner was convicted as charged (Ex. B).  He was sentenced as a habitual felony offender to forty-five (45) years of imprisonment, with a 25-year mandatory minimum, and with pre-sentence credit of 568 days (Ex. A at 134–39, 153–59).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA").  The First DCA affirmed the judgment per curiam without written opinion on January 25, 2006 (Ex. F).  Stoudmire v. State, 920 So. 2d 5 (Fla. 1st DCA 2006) (Table). Petitioner did not seek further review.

On February 20, 2006, Petitioner filed a pro se motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. G at 1–24).  The state circuit court summarily denied three of Petitioner's ten claims (id. at 62–65).  The court appointed counsel for Petitioner and held a limited evidentiary hearing on Petitioner's remaining seven claims (id., Ex. H). Following the evidentiary hearing, the state court denied Petitioner's remaining claims (Ex. G at 112–17).  Petitioner appealed the decision to the First DCA.  On July 11, 2008, the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing October 7, 2008 (Exs. L, M).  Stoudmire v. State, 990 So. 2d 1067 (Fla. 1st DCA 2008) (Table).

Petitioner filed the instant federal habeas action on February 6, 2009 (doc. 1). Respondent concedes that the petition is timely (doc. 19 at 24–25).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neeley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409. Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law

occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, — F.3d —, 2011 WL 609844, at *13 (11th Cir. Feb. 23, 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. See Gill, supra at *17 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at *18 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see e.g.* <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); <u>Jones v. Walker</u>, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* <u>Gill</u>, 2010 WL 609844, at * 18.  A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision.  *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See* <u>Panetti v. Quarterman</u>, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same).  The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).

## III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the

---

[4]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
        (A)  the applicant has exhausted the remedies available in the courts of the State; or
        (B)  (i)  there is an absence of available State corrective process; or
            (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.

State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to

. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim. *Id.*, 459 U.S. at 7 and n.3. Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought. *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364. The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5] The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." Duncan, 513 U.S. at 365–66. More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004). In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. This language, while not part of the Court's holding, provides helpful instruction. With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal. Presented with a state constitutional claim, the state court applied state law in resolving the appeal. 513 U.S. at 366.

opportunity to consider allegations of legal error without interference from the federal judiciary.'" McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)). This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

The Eleventh Circuit, prior to Duncan, had broadly interpreted the "fair presentation" requirement. After Duncan, however, the Eleventh Circuit has taken a more narrow approach. For example, in Zeigler v. Crosby, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution. 345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words: "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution. Id. at 1308 n.5. The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases. The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us." Id.

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review. See O'Sullivan, 526 U.S. at 839–40, 848; Bailey v. Nagle, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court will also consider a claim procedurally defaulted if it was

_____

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." McNair v. Campbell, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. Id.

presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* Coleman v. Thompson, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); Caniff v. Moore, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); Chambers v. Thompson, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine.  Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424-25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate.

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

*Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause and prejudice or a fundamental miscarriage of justice. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause. Tower, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS[8]

A.    Ground Two: "Ineffective assistance of counsel deprived Defendant of his Sixth & Fourteenth Amendment rights to a fair trial, effective assistance of counsel, and due process."

Ground Three: "Ineffective assistance of counsel deprived Defendant of his Sixth & Fourteenth Amendment rights to a fair trial, a fair and impartial judge, and affirmance of same effective assistance of counsel and due process."

Ground Five: "Ineffective assistance of counsel deprived Defendant of his Sixth and Fourteenth Amendment rights to a fair trial, effective assistance of counsel, and due process."

---

[8] The court re-ordered Petitioner's claims for organizational purposes.

> Ground Seven:  "Ineffective assistance of counsel deprived Defendant of his Sixth and Fourteenth Amendment rights a [sic] fair trial, effective assistance of counsel, and due process."
>
> Ground Eight:  "Ineffective assistance of counsel deprived Defendant of his Sixth and Fourteenth Amendment rights to confront his accusers, a fair trial, effective assistance of counsel, and due process."
>
> Ground Nine:  "Ineffective assistance of counsel deprived Defendant of his Sixth and Fourteenth Amendment rights to confront his accusers, a fair trial, effective assistance of counsel, and due process."

In Ground Two, Petitioner alleges trial counsel performed deficiently because counsel elicited prejudicial collateral crime and/or bad character evidence and improperly impugned the character of the location where the shooting occurred (doc. 1 at 5–6).  Specifically, he contends counsel failed to object to Detective Dan Sequeira's statement that he knew Petitioner's nickname of "Bang Wang" to be a "street name" based upon Sequeira's experience working in the community (*id.* at 5).  Petitioner further contends trial counsel exacerbated the improper evidence by asking Detective Sequeira about his prior knowledge of Petitioner, to which the detective indicated he had not had "personal dealings" with Petitioner, but other detectives had (*id.*).  Petitioner additionally alleges counsel failed to properly prepare defense witness Michael Jenkins, which resulted in Jenkins's providing evidence of Petitioner's bad character by testifying that the victim stated Petitioner only "picks on" people smaller than him and people who want to fight (*id.* at 5).  Petitioner also contends counsel erred by referring to the area where the crime occurred as a "bad area of town" in her opening statement and closing argument, and by eliciting testimony from Detective Sequeira regarding the bad character of the neighborhood (*id.* at 5–6).

In Ground Three, Petitioner alleges trial counsel performed deficiently by failing to object when the trial court made improper comments and appeared to assist the prosecution at three different times during trial (doc. 1 at 6).  The first instance occurred when the prosecutor objected during defense counsel's re-cross of Ryan Richardson without stating a reason for the objection, and the trial court sustained the objection as being outside the scope of redirect examination (*id.*).  The second instance occurred when the prosecutor tendered Dr. Jimenez as a medical expert, and the court asked, "In the field of emergency room care?" (*id.*).  The third instance occurred when the trial

court "actively advocated the role of the prosecutor" regarding defense counsel's introduction of a prior conviction of Yvonne Harris, a defense witness (*id.*).

In Ground Five, Petitioner alleges trial counsel performed deficiently, because counsel failed to object to "multiple instances of improper testimony and/or questioning" (doc. 1 at 8). Petitioner identifies seven separate instances in his petition (*id.* at 8–9).

In Ground Seven, Petitioner alleges trial counsel performed deficiently because counsel failed to object to twenty improper comments by the prosecutor during voir dire and opening statements (doc. 1 at 10–12).

In Ground Eight, Petitioner alleges trial counsel performed deficiently for stipulating to the deletion of sections of the jury instruction on weighing of the evidence, including whether a witness had been pressured to testify and whether a witness had received favorable treatment, because the theory of the case was that the victim and his friends manufactured the allegations to avoid violation of the victim's community control (doc. 1 at 13).

In Ground Nine, Petitioner alleges trial counsel performed deficiently by failing to investigate and call exculpatory witnesses including Muhammed Williams, George Lee, Daryl Wellborn, Ernest Riggs, Tyisha Tarver, and Ray Ray Washington (doc. 1 at 13–14).

Respondent contends Petitioner failed to exhaust these claims because he failed to present them in his post-conviction appeal (doc. 19 at 32–38, 46–47, 52–55, 69–72, 75–76). Therefore, none of the claims were exhausted, and all are procedurally barred from federal review (*id.*).

Respondent's argument is supported by the record. Petitioner raised all of these claims in his Rule 3.850 motion (Ex. G at 5–8, 9–13, 15–22). The state circuit court held an evidentiary hearing on some of the claims and denied relief on all of them (*id.* at 62–65, 112–17, Ex. H). In Petitioner's pro se appellate brief, Petitioner did not argue any of the issues in Grounds Two, three, Five, Seven, Eight, and Nine (Ex. I). The State filed an answer brief addressing only the issues presented in Petitioner's initial brief (Ex. J). The First DCA affirmed the lower court's decision (Ex. L).

The Florida Rules of Appellate procedure provide that in a case where a movant's Rule 3.850 motion is denied after an evidentiary hearing, a movant wishing to appeal the denial of his motion

must file an initial brief.  *See* Fla. R. App. P. 9.141(b)(3); *see also* <u>Pennington v. State</u>, 34 So. 3d 151, 152 n.1 (Fla. 1st DCA 2010) (briefing is required in appeal from non-summary denial of Rule 3.850 motion).  It is well established in Florida courts that claims for which an appellant has not presented any argument, or for which he provides only conclusory argument, are insufficiently presented for appellate review and are waived.  *See* <u>Gamble v. State</u>, 877 So. 2d 706 (Fla. 2004); <u>Reed v. State</u>, 875 So. 2d 415 (Fla. 2004); <u>Cooper v. State</u>, 856 So. 2d 969, 977 n.7 (Fla. 2003); <u>Marshall v. State</u>, 854 So. 2d 1235, 1252 (Fla. 2003) <u>Sweet v. State</u>, 810 So. 2d 854, 870 (Fla. 2002); <u>Johnson v. State</u>, 769 So. 2d 990, 1005–06 (Fla. 2000); <u>Shere v. State</u>, 742 So. 2d 215, 217 n.6 (Fla. 1999); <u>Duest v. Dugger</u>, 555 So. 2d 849, 852 (Fla. 1990) ("Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived.").  Florida courts consistently apply this rule, even in cases where a post-conviction evidentiary hearing is limited in scope to some but not all post-conviction claims; thus, a movant wishing to preserve any claims for appellate review, whether summarily denied or not, must present argument on those issues in his initial brief.[9]  *See* <u>Prince v. State</u>, 40 So. 3d 11 (Fla. 4th DCA 2010); <u>Hammond v. State</u>, 34 So. 3d 58 (Fla. 4th DCA 2010) (claim for which appellant did not present argument, or for which he provided only conclusory argument, was insufficiently presented for appellate review, regardless of whether claim was among those claims litigated at evidentiary hearing or among those claims summarily denied by trial court); <u>Williams v. State</u>, 24 So. 3d 1252 (Fla. 1st DCA 2009) (where appellant received evidentiary hearing on some of his post-conviction claims and others were summarily denied, appellate court would review only those summarily denied claims which movant argued in appellate brief); *see also* <u>Ward v. State</u>, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (en banc) (where all of appellant's post-conviction claims were summarily denied, but appellant chose to file initial brief on appeal (even though not required to do so under Fla R. App. P. 9.141(b)(2)), appellant abandoned any issues not addressed in initial brief);

---

[9] Even if the Florida appellate courts were not absolutely consistent in applying this rule, such is not required to permit a federal court to conclude that a state procedural rule is adequate for federal habeas purposes.  *See* <u>Maples v. Allen</u>, 586 F.3d 879, 888 (11th Cir. 2009) (while "regularly followed" means "closely hewn to," it does not mean complete unanimity or absolute consistency of state decisions applying the rule) (citations omitted).

Watson v. State, 975 So. 2d 572 (Fla. 1st DCA 2008) (same); Austin v. State, 968 So. 2d 1049 (Fla. 5th DCA 2007) (same)).

The undersigned concludes that the Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his appellate brief (or for which he provides only conclusory argument), even when the insufficiently presented claims were summarily denied by the trial court, is a firmly established and regularly followed procedural rule for purposes of federal habeas. *See, e.g.*, Green v. McNeil, No. 1:09cv204/MMP/GRJ, 2011 WL 2790167, at *7 (N.D. Fla. June 22, 2011) (unpublished), *Report and Recommendation adopted*, 2011 WL 2790180 (N.D. Fla. July 15, 2011); Curry v. Buss, No. 3:08cv539/LAC/EMT, 2011 WL 2174038 (N.D. Fla. Apr. 26, 2011) (unpublished), *Report and Recommendation adopted*, 2011 WL 2149544 (N.D. Fla. June 1, 2011); Rasley v. Buss, No. 5:08cv368/RH/EMT, 2011 WL 2358650 (N.D. Fla. Apr. 11, 2011) (unpublished), *Report and Recommendation adopted*, 2011 WL 2293383 (N.D. Fla. June 9, 2011); Corn v. McNeil, No. 3:08cv199/MCR/EMT, 2010 WL 5811343 (N.D. Fla. Nov. 24, 2010) (unpublished), *Report and Recommendation adopted*, 2011 WL 88713 (N.D. Fla. Feb. 10, 2011); Ross v. McNeil, 5:07cv219/RS/EMT, 2010 WL 2179039 (N.D. Fla. Apr. 14, 2010) (unpublished), *Report and Recommendation adopted*, 2010 WL 2179037 (N.D. Fla. May 28, 2010) (unpublished), *cert. of appealability denied*, No. 10-13013-A (11th Cir. Oct. 4, 2010) (certificate of appealability sought on issue of whether Florida's procedural rule, that defendant waived or abandoned appellate review of post-conviction claims that were summarily denied and not addressed in defendant's appellate brief, where trial court held evidentiary hearing on other claims, was firmly established and regularly followed); Sharp v. McNeil, No. 4:07cv17/MP/MD, 2009 WL 981594, at **13–14 (N.D. Fla. Apr. 10, 2009) (unpublished); Durain v. McNeil, No. 2:08cv24-FTM-29DNF, 2008 WL 4888989, at *9 (M.D. Fla. Nov. 12, 2008) (unpublished); Williams v. McDonough, No. 8:02cv965-T-30MAP, 2007 WL 2330794, at **1–2 (M.D. Fla. Aug. 14, 2007) (unpublished); Walker v. Sec'y, Dep't of Corr., No. 8:05-cv-1539-T-17MAP, 2007 WL 1747181, at *4 (M.D. Fla. June 18, 2007) (unpublished).[10]

---

[10] The undersigned cites Green, Curry, Rasley, Corn, Ross, Sharp, Durain, Williams, and Walker only as persuasive authority and recognizes that the opinions are not considered binding precedent.

Therefore, the undersigned agrees with Respondent's position that the claims asserted in Grounds Two, Three, Five, Seven, Eight, and Nine were not properly exhausted in the state courts. Additionally, Petitioner has no available avenue through which he may properly exhaust his claims in the state courts. Therefore, the claims are considered procedurally defaulted. Moreover, Petitioner has failed to show cause for his failure to properly exhaust any of these claims; and he has not shown he is entitled to review under any other recognized exception to the procedural bar.[11] Therefore, he is not entitled to federal review of Grounds Two, Three, Five, Seven, Eight, and Nine.

B.   Ground One: "Ineffective assistance of counsel deprived Defendant of his Sixth & Fourteenth Amendment rights to testify, a fair trial, effective assistance of counsel, and due process."

Petitioner claims that trial counsel's ineffective assistance caused him to waive his right to testify (doc. 1 at 4). He asserts two allegedly deficient acts by counsel. First, he alleges counsel failed to advise him that if he testified, he would be entitled to a limiting jury instruction prohibiting the jury from considering his prior convictions as evidence of guilt (*id.*). Second, he alleges counsel changed the trial strategy without his knowledge or consent (*id.*). With regard to the latter claim, a sub-claim, Petitioner states he and counsel had agreed that the defense would not present any testimony except Petitioner's to preserve the "sandwich," that is, first and last closing argument (*id.*).[12] He alleges counsel failed to adequately cross-examine Ryan Richardson and the victim, and thus had to call these witnesses as defense witnesses, thereby losing the right to the "sandwich" (*id.*). He states counsel told him his testimony was not needed, since she was calling other defense witnesses instead (*id.*). Petitioner argues he would have testified on his own behalf had counsel not made these errors (*id.*).

---

[11] Although Petitioner refers to himself as innocent in his petition (*see* doc. 1 at 4, 6, 7, 10, 12, 13, 14, 15), he has not supported his allegations with new reliable evidence that was not presented at trial. *See* Schlup, 513 U.S. at 327. He has thus failed to show he is entitled to review under the "fundamental miscarriage of justice" exception to the procedural bar.

[12] Under Florida law as it existed at the time of Petitioner's trial, the defense could avail itself of a strategic procedural advantage by limiting the presentation of evidence to only the defendant's testimony. Fla. R. Crim. P. 3.250 (2004). If the defense did so, it maintained the primacy and recency effect in the closing argument "sandwich" or, in other words, the benefits inherent in giving both first and last closing argument. *See* Beasley v. State, 18 So. 3d 473, 491–92 (Fla. 2009).

Respondent contends Petitioner exhausted his state court remedies only with respect to the claim regarding counsel's failure to advise him about the limiting jury instruction (doc. 19 at 26). Respondent contends Petitioner did not exhaust his claim that counsel failed to adequately cross-examine witnesses and changed trial strategy without Petitioner's consent, because he failed to present this issue in his post-conviction appeal (*id.*). Respondent further contends Petitioner cannot file another post-conviction appeal; therefore, the claim is procedurally barred from federal review (*id.* at 27).

The state court record shows that Petitioner presented both aspects of this claim in Ground One of his Rule 3.850 motion (Ex. G at 2–4). The state circuit court denied the claim (*id.* at 112). Petitioner appealed the decision but only argued the issue of trial counsel's failure to advise him that if he testified, he would be entitled to a limiting jury instruction advising the jury they could not use the fact of his prior convictions as a theory for guilt (Ex. I at 3, 5–7). Petitioner did not argue the issue of counsel's failure to adequately cross-examine Mr. Richardson and the victim, which allegedly changed the trial strategy without Petitioner's consent (*id.*). Pursuant to the firmly established and regularly followed Florida procedural rule deeming as waived or abandoned those claims for which an appellant has not presented any argument in his appellate brief, the undersigned concludes Petitioner exhausted only the portion of Ground One regarding counsel's failure to advise him that if he testified, the jury would be instructed that they could not use the fact of his prior convictions as evidence of guilt. The remaining arguments in Ground One were not exhausted and are procedurally barred. Accordingly, the court will proceed to analyze only whether Petitioner has established entitlement to relief under § 2254(d) as to the exhausted portion of his claim.

1.      Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice

prong if the court determines that the performance prong is not satisfied.  Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)).  The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89.  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.  If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is or what line of defense must be asserted." Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317). Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'" Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden of demonstrating prejudice is high.  *See* <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Id.* (quoting <u>Strickland</u>, 466 U.S. at 693).  However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  <u>Strickland</u>, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694.  Indeed, it would be "contrary to" the law clearly established in <u>Strickland</u> for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. <u>Williams v. Taylor</u>, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. <u>Strickland</u>, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.

2.      Federal Review of State Court Decision

As previously noted, Petitioner raised this ineffective assistance of counsel claim in Ground One of his Rule 3.850 motion (Ex. G at 2).  At the post-conviction evidentiary hearing, Petitioner testified that he wanted to testify at trial, but Attorney Clapp told him she did not think it was a good idea, because he was a convicted felon (Ex. H at 14).  Petitioner stated Attorney Clapp told him she was concerned that he had a criminal record, and that fact would reflect poorly to the jury (*id.* at 16). He stated Clapp did not advise him that if he testified, he would have a right to a limiting jury instruction, so he did not know that the jury would be able to use his prior convictions only to assess his credibility, but not to determine his guilt (*id.* at 16–17).  Petitioner testified that if he had information about the limiting instruction, he would have testified (*id.* at 17).

Attorney Clapp testified that the primary theory of the defense was that Roger Price, the victim, was shot during a drive-by shooting, and Petitioner was not the shooter (Ex. H at 93). She testified that at one point, she and Petitioner discussed not calling any defense witnesses because she thought it would be more beneficial to have first and last closing argument, but as the trial progressed, they decided it would be more beneficial to call witnesses without Petitioner's having to testify (*id.*). Attorney Clapp testified that prior to trial, Petitioner was adamant about wanting to testify, but during the trial, when it came time for him to testify, he decided not to testify (*id.* at 62, 64–65, 94–97). She testified that she discussed with Petitioner the pros and cons of testifying (*id.* at 95). She stated she told him that her main concern with his testifying was that he would be exposed to cross-examination, which would expose his prior convictions (*id.* at 62, 64, 95). Clapp admitted she did not advise Petitioner of the availability of a limiting jury instruction, but she discussed with him the fact that the jury could consider the fact of his prior convictions as part of his credibility, or how the jury perceived what he was saying (*id.* at 63, 95). She stated she also discussed the fact that other witnesses were convicted felons, and the jury would consider that fact with regard to whether they believed that witness or not (*id.*).[13] Attorney Clapp testified she felt that the fact that the jury would not know that Petitioner was a convicted felon could be favorable to the defense (*id.* at 64, 95). She testified that after she presented the last defense witness, she requested a brief recess to discuss with Petitioner whether he wished to testify (*id.* at 62, 96). She testified that both she and Petitioner's family urged him not to testify (*id.*). She testified she had already recommended to Petitioner that he not testify, and during the recess, his family urged him not to testify, so he chose not to do so (*id.* at 62, 96). Attorney Clapp testified that Petitioner's waiver of his right to testify was reflected in the record (*id.* at 65, 96–97).

The trial transcript indicates that at the beginning of the recess described by Attorney Clapp (outside the presence of the jury), Clapp informed the court that Petitioner would probably testify, but after speaking with Petitioner, counsel announced that Petitioner chose not to testify (Ex. B at 261, 262). The trial court conducted the following inquiry of Petitioner regarding his decision not to testify:

---

[13] The victim, Roger Price, testified at trial that he had three felony charges (Ex. B at 85–86).

THE COURT:  Mr. Stoudmire, would you stand up for me, please, sir.  You heard your attorney announce that you do not wish to testify in this case.  Do you understand that you have an absolute right to testify in this case?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you also understand that by choosing not to testify that you do not get to relay your side of the story to the jury in your own words?  Do you understand all of that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you discussed that fully with your attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  And is it your decision not to—to choose not to testify in this case?

THE DEFENDANT:  Yes, sir.

THE COURT:  Has anyone forced you or promised you anything in exchange for that decision?

THE DEFENDANT:  No, sir.

 (*id.* at 262–63).  According to the record, Petitioner was previously convicted of approximately six (6) felonies (*see* Ex. A at 43–98, 145–46).[14]

The state circuit court correctly identified the <u>Strickland</u> standard as the controlling legal standard (Ex. G at 112).  Based upon the testimony at the evidentiary hearing, the state court found as fact that Attorney Clapp consulted with Petitioner about his right to testify and recommended, as a matter of trial strategy, that he exercise his right not to testify (*id.* at 113).  The court further found

---

[14] According to court records submitted at Petitioner's sentencing, he was convicted of two counts of aggravated battery (second degree felonies) on April 1, 1992, in Case No. 91-01157-CFA; one count of principal to possession of a controlled substance (a second degree felony) on April 1, 1992, in Case No. 91-013887-CFA; one count of possession of cocaine (a third degree felony) on July 10, 1997, in Case No. 96-000801-CFA; and one count of felony battery (a third degree felony) and one count of possession of a controlled substance (a third degree felony) on April 20, 2000, in Case Nos. 99-823 and 99-1052-CFA (Ex. A at 62–76, 78–85, 93–98).

that Petitioner was fully informed about his right to testify, but elected not to do so after consulting with counsel (*id.*).  The court concluded Petitioner failed to show that counsel was ineffective (*id.*).

Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide.  United States v. Teague, 953 F.2d 1525, 1533 (11th Cir. 1992).  This advice is crucial because there can be no effective waiver of a fundamental constitutional right unless there is an "intentional relinquishment or abandonment of a known right or privilege."  *Id.* (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S. Ct. 1019, 1023, 82 L. Ed. 1461 (1938)).  Moreover, "if counsel believes that it would be unwise for the defendant to testify, counsel may, and indeed should, advise the client in the strongest possible terms not to testify."  Teague, 953 F.2d at 1533.  The defendant can then make the choice of whether to take the stand with the advice of competent counsel.  In Teague, the Eleventh Circuit noted several "good tactical reasons" why it may not be best for the defendant to testify in some circumstances, for example, "if the defendant might provide evidence of missing elements of the crime on cross-examination, if the defendant might be prejudiced by revelation of prior convictions, or if the prosecutor might impeach the defendant using a prior inconsistent statement."  953 F.2d at 1533 n.9.

In this case, the record demonstrates that Attorney Clapp advised Petitioner of his right to testify or not to testify, the strategic implications of each choice (including, for example, that the jury could consider evidence of Petitioner prior felony convictions in weighing his credibility), and that it was ultimately Petitioner's decision to make.  Counsel's failure to include specific advice regarding the availability of a jury instruction, advising that the jury could not consider his six prior felony convictions as evidence of guilt, was not an omission so outside the range of reasonably professional assistance as to render counsel's performance ineffective in the constitutional sense.  Therefore, the state court's denial of Petitioner's ineffective assistance of counsel claim was not contrary to or an unreasonable application of Strickland.

C.    Ground Four:  "Ineffective assistance of counsel deprived Defendant of his Fourteenth Amendment rights to a fair trial, effective assistance of counsel, and due process."

Petitioner alleges trial counsel performed deficiently by failing to object to the admission of a photographic line-up, which showed Petitioner and five (5) other males in prison attire (doc. 1 at

7).  Petitioner concedes counsel objected to the photographic line-up going to the jury for deliberations, but he contends the objection was untimely and without a legal basis, since all evidence admitted at trial is properly sent to the jury (*id.*).  Petitioner argues counsel should have objected to the photographic line-up when the State sought to admit it into evidence (*id.*).

Respondent concedes Petitioner exhausted this claim in the state courts, but contends Petitioner failed to establish that the state court's adjudication of the claim was contrary to or an unreasonable application of Strickland (doc. 19 at 41–46).

       1.       Clearly Established Federal Law

The Strickland standard is set forth *supra*.

       2.       Federal Review of State Court Decision

Petitioner presented this issue in Ground Four of his Rule 3.850 motion (Ex. G at 8– 9).  He argued defense counsel should have objected to admission of the photographic line-up on the ground that it was collateral crime evidence (*id.* at 9).  At the post-conviction evidentiary hearing, Attorney Clapp testified she did not object to admission of the photographic line-up when the State sought to admit it, because she did not believe it was prejudicial at that time (Ex. H at 74, 98).  She testified that as the trial progressed, she and Petitioner discussed the issue, and she decided to object to the photograph going back to the jury (*id.* at 98–99).

The trial transcript reflects that the photographic line-up was admitted into evidence as State's Exhibit 1 without objection from defense counsel (Ex. B at 165, *see also* Ex. A at 31, Ex. C at 168).  There is no indication from the record that the exhibit was published to the jury during trial (*see* Ex. B at 165–67).  After the jury retired for deliberations, defense counsel asked the court for permission to examine the exhibits before they were sent to the jury (*id.* at 332).  The court granted counsel's request and adjourned the proceedings, whereupon the recording of the proceedings stopped (*id.*).  At this point, Attorney Clapp objected to the photographic line-up going to the jury for deliberations, on the ground that it was unduly prejudicial to the defense (Ex. C at 168).[15]  The

---

[15] The record was supplemented on appeal with a stipulation by the prosecutor and Attorney Clapp that the following occurred at trial:  (1) the defense did not object to admission of the photographic line-up when it was offered into evidence; (2) at the close of all the evidence, the defense objected to the photographic line-up going to the jury for deliberations based on the line-up being unduly prejudicial to the defense; and (3) the trial court heard the defense's

trial court ruled that the photographic line-up was not unfairly prejudicial and allowed it to go to the jury (*id.* at 168)

Additionally, the record confirms that Attorney Clapp repeated her argument regarding the prejudicial nature of the photographic line-up in her motion for new trial (Ex. A at 41–42).  She argued Petitioner was prejudiced by the court's permitting the jury to view the photographic line-up which depicted him in a prison uniform (*id.*).  The court heard arguments on the motion for new trial (*id.* at 140–44).  Attorney Clapp argued that Petitioner had not testified at trial, therefore, the jury believed he had a clean record (*id.* at 141, 142–43).  She argued that the Department of Corrections patch on Petitioner's shirt was evident in Petitioner's photograph; and allowing the jury to see Petitioner in a prison uniform could have influenced the decision to find him guilty (*id.* at 141–43).  The trial court denied the motion for new trial (*id.* at 143–44).

In denying this claim, the state post-conviction court analyzed whether the photographic line-up was properly admitted into evidence at trial (Ex. G at 114).  Applying the Florida standard set forth in Green v. State, 641 So. 2d 391 (Fla. 1994), the court determined it was properly admitted, because it was not unnecessarily suggestive (although Petitioner was dressed in prison garb, all of the other men in the line-up were dressed in the same garb), and there was no likelihood of irreparable misidentification (*id.* at 114, 122).  The court therefore denied Petitioner's claim that trial counsel erred by failing to timely object to admission of the line-up (*id.* at 114).

Given the state court's holding, Petitioner cannot make the showings required under federal law to demonstrate ineffective assistance of counsel.  As discussed *supra*, under Strickland, a defendant claiming ineffective assistance of counsel must show both that counsel's performance was deficient and that the deficient performance prejudiced him.  466 U.S. at 687.  If the photographic line-up was admissible under Florida law, as the Florida court determined, Petitioner's counsel's performance in failing to object to its admission cannot be considered deficient.  See Ladd v. Jones, 864 F.2d 108, 110 (11th Cir. 1989) (holding where "claims were meritless, it was clearly not ineffective for counsel not to pursue them.").  These findings also mean that Petitioner cannot show he suffered prejudice resulting from his attorney's performance.  See Herring v. Sec'y, Dep't of Corr,

objection and ruled that the photographic line-up did not unfairly prejudice the defense (Ex. C at 168).

397 F.3d 1338, 1354–55 (11th Cir. 2005) (petitioner could not establish deficient performance or prejudice where state supreme court had determined that objection (which counsel was faulted for not making) would have been overruled).

Although an ineffective assistance of counsel claim is a federal constitutional claim, which the court considers in light of the clearly established rules of Strickland, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law." Alvord v. Wainwright, 725 F.2d 1282, 1291 (11th Cir. 1984) (in the context of alleged ineffectiveness of appellate counsel, "[o]n the one hand, the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension," but, "[o]n the other hand, the validity of the claim [counsel] failed to assert is clearly a question of state law, and we must defer to the state's construction of its own law.") (citations omitted);[16] see also Callahan v. Campbell, 427 F.3d 897, 932 (11th Cir. 2005) ("[i]t is a fundamental principle that state courts are the final arbiters of state law, federal habeas courts should not second-guess them . . .") (quotation and omitted). In the instant case, the Florida court determined that the line-up was admissible. Further, the state court's decision that Petitioner's counsel was not ineffective rests on this interpretation of Florida law. In light of the state court's conclusion that there was no meritorious basis to object to admission of the photographic line-up, Petitioner has failed to show that the state court's adjudication of his ineffective assistance of counsel claim was unreasonable.

Moreover, the timing and substance of the objection that defense counsel made was entirely reasonable. The trial transcript demonstrates that at the time the photographic line-up was admitted into evidence, Petitioner had led counsel to believe he intended to testify on his own behalf, which meant the jury would become aware of the fact that he had prior felony convictions.[17] Because the

---

[16] Alvord was superseded by statute on other grounds as noted in Hargrove v. Solomon, 227 Fed. Appx. 806 (11th Cir. 2007); see also United States v. Battle, 264 F. Supp. 2d 1088, 1134–35 (N.D. Ga. 2003) (noting that Alvord, involving a claim of ineffectiveness for failure to raise an insanity defense, predated passage of the Insanity Defense Reform Act of 1984).

[17] This is evidenced by the fact that after the prosecution rested, and the defense had presented testimony from several witnesses but had not yet rested, defense counsel (outside the presence of the jury) informed the court that Petitioner would probably testify but requested a recess to discuss the matter with him, and then announced that Petitioner

jury would become aware of this fact, counsel had no reasonable basis to argue <u>at that time the line-up was offered into evidence</u> that the line-up was unfairly prejudicial.  However, upon Petitioner's making the decision not to testify (and the jury thus not having any knowledge that Petitioner was a convicted felon), which occurred well <u>after</u> admission of the line-up, a reasonable basis had developed for counsel's objecting to the jury's viewing the photographic line-up, that is, it was unduly prejudicial.  Most important, counsel made the objection, and the court overruled it (<u>not</u> on the ground that it was untimely).  Thus, because the court ruled on the merits of counsel's objection, the court's ruling would have been the same even if counsel had objected earlier.  Petitioner has therefore failed to show deficient performance or prejudice with respect to the timing or substance of counsel's objection.

Petitioner's having failed to demonstrate that the state court's denial of his ineffective assistance of counsel claim was contrary to or an unreasonable application of <u>Strickland</u>, he is not entitled to federal habeas relief on this claim.

       D.    <u>Ground Six:  "Ineffective assistance of counsel deprived Defendant of his Sixth and Fourteenth Amendment rights to confront his accusers, a fair trial, effective assistance of counsel, and due process."</u>

Petitioner alleges defense counsel performed deficiently because she failed to impeach the victim's trial testimony with a recorded statement by the victim to law enforcement on the night of the shooting (doc. 1 at 10).  Petitioner states the victim never told law enforcement he actually saw the shooter, but he testified at trial that Petitioner was the shooter (*id.*).  Petitioner contends the issue of whether the victim saw Petitioner shoot him went to the heart of the defense; thus, if counsel had impeached the victim, the result of trial would have been different (*id.*).

Respondent concedes Petitioner exhausted this claim in the state courts (doc. 19 at 48).  Respondent contends Petitioner failed to demonstrate that the state court's denial of his claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of <u>Strickland</u> (*id.* at 49–52).

       1.    Clearly Established Federal Law

---

chose not to testify (Ex. B at 261, 262).

The <u>Strickland</u> standard is set forth *supra*.

       2.     Federal Review of State Court Decision

Petitioner presented this issue in Ground Six of his Rule 3.850 motion (Ex. G at 13–15). According to Petitioner's testimony at the post-conviction evidentiary hearing, Attorney Clapp played two audio recordings for him (Ex. H at 31).  One tape included a statement of the victim and the other contained a statement of Bobby Harris (*id.*).  Petitioner stated Attorney Clapp subsequently gave him a transcript (*id.*).  According to Petitioner, on the tape, the victim did not say he saw Petitioner shoot him; he stated only that he heard gunshots (*id.* at 32).  Petitioner testified he believed that Clapp intended to use that statement to impeach the victim (*id.*).  According to Petitioner, the strategy Attorney Clapp intended to use was not to call any witnesses, but rather to impeach the State's witnesses (*id.* at 34).  According to Petitioner, the victim testified at trial that he saw Petitioner shoot him, but counsel failed to impeach this testimony with the tape (*id.*).  Petitioner stated that Attorney Clapp attempted to play the tape when a detective was on the stand, but the trial judge told her that the tape should have been played when the victim was on the stand (*id.*). Petitioner stated Attorney Clapp then called the victim during the defense case in chief, but when she attempted to play the tape, the trial judge would not permit it, stating that defense counsel could not impeach her own witness with the tape (*id.* at 36).  Petitioner testified that the point of his post-conviction claim was that if Clapp could not get the tape into evidence, she instead should have used the transcript to impeach the victim (*id.* at 37).  Petitioner stated that if Attorney Clapp would have correctly cross-examined the victim, she would have impeached his testimony, and the tape would have been admitted into evidence (*id.* at 38).

       At the evidentiary hearing, Attorney Clapp testified that during discovery, she became aware of law enforcement's audio-taped interview of the victim (Ex. H at 83).  She stated she shared that tape with Petitioner (*id.*).  Attorney Clapp asked her secretary to prepare a transcript of the tape, but Clapp did not have it officially transcribed, nor did she compare the transcript with the tape to verify that they were identical (*id.* at 84).  Attorney Clapp testified the transcript was a tool for her to work from (*id.* at 84–85).  Clapp stated she intended to wait until the victim testified to determine whether she needed to introduce the tape (*id.* at 85).  Attorney Clapp stated that the taped interview and the

victim's trial testimony were consistent (*id.*).  Clapp stated the victim's trial testimony was more detailed than his statement to law enforcement; for example, in his statement to law enforcement, he said he started running and was shot in the rear end, and at trial, the victim described his running pattern as being in an "S" or zig-zag manner and stated he looked behind himself as he ran to see where Petitioner was located  (*id.* at 85–86).  Attorney Clapp further testified that in both the audio-taped statement and the victim's trial testimony, he identified the shooter as "Bang Wang" (*id.* at 85).  Ms. Clapp did not recall specifically telling Petitioner she would utilize the tape (*id.* at 87).  She explained that trial is a "very fluid thing" (*id.*).  As a result, she would not tell anyone she would use a certain piece of evidence (*id.*).  She also stated that the victim's statement to law enforcement was not a cornerstone of the defense, and she never told Petitioner otherwise (*id.*).  She testified that the cornerstone of the defense was (1) an emergency medical technician's notation in the victim's medical records that the victim told medical staff he was shot during a drive-by shooting, and (2) testimony from a witness, Michael Jenkins, that he never saw Petitioner with a gun, and Petitioner was running in front of him after the shooting began (*id.* at 87–88).

Attorney Clapp's working copy of the unofficial transcript  was admitted into evidence at the post-conviction evidentiary hearing (Ex. G at 107–11).  In the statement, the victim told law enforcement that he walked out of the CK Café, and "he" was sitting in front of the café (*id.* at 109).  Law enforcement asked the victim who "he" was, and the victim said, "I don't know his real name, they call him "Bang Wang" (*id.*).  The victim stated he and "Bang Wang" began fighting, and when he swung at "Bang Wang," he saw "Bang Wang" look at Roger Alston and say, "Give me that.  Give me that." (*id.* at 110).  The victim said he knew Alston gave "Bang Wang" a gun, so he ran (*id.*).  He said he heard six shots, and on the fourth shot, he was hit in the rear end (*id.*).

The state court reviewed the transcript of the victim's statement and found as fact that nothing in the victim's statement contradicted his trial testimony that he saw Petitioner shoot at him (Ex. G at 115).  The court thus determined there was no basis for Petitioner's ineffective assistance of counsel claim (*id.*).

In Petitioner's reply brief, he attempts to argue that the state court's finding of fact was unreasonable because the record demonstrates that the victim's statements were contradictory (doc.

24 at 7–8).  Petitioner asserts the victim told law enforcement he was running in a zig-zag manner with his back turned, which contradicted his trial testimony that he saw Petitioner shoot him (*id.*).

Upon comparing the content of the victim's statement to law enforcement, described *supra* (*see* Ex. G at 108–11), with the victim's trial testimony (Ex. B at 79–109, 211–21), the undersigned concludes that the evidence does not clearly and convincingly show that the trial court's finding was unreasonable.  In fact, the record fully supports the state court's determination that the victim's statements to law enforcement did not contradict his trial testimony.  Therefore, Petitioner failed to show that counsel's failure to impeach Mr. Price with the prior statement was deficient, or that there is a reasonable probability he would have been acquitted if counsel had attempted to impeach his testimony with his prior statement.  Accordingly, the state court's denial of this claim was not based upon an unreasonable determination of the facts, nor was it contrary to or an unreasonable application of <u>Strickland</u>.

E.      <u>Ground Ten:  "Ineffective assistance of counsel deprived Defendant of his Sixth and Fourteenth Amendment rights to confront his accusers, a fair trial, effective assistance of counsel, and due process."</u>

Petitioner argues the cumulative effect of all of counsel's errors alleged in Grounds One through Nine, *supra*, combined to create constitutionally deficient, prejudicially ineffective assistance of counsel (doc. 1 at 14).  He adopts and incorporates the arguments he presented in Grounds One through Nine (*id.*).  He argues that absent these errors, there is "far more" than a reasonable probability of a different outcome at trial (*id.*).

Respondent concedes Petitioner exhausted this claim of cumulative error with respect to Grounds Four, Six, and the exhausted portion of Ground One by presenting the claim in his Rule 3.850 motion and briefing it on appeal to the First DCA (doc. 19 at 77).  Respondent argues Petitioner did not exhaust his cumulative error claim to the extent he asserts it with regard to the remaining claims (the remaining part of Ground One and Grounds Two, Three, Five, Seven, Eight, and Nine), because he failed to properly exhaust those individual claims in the state courts (*id.*).

The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims.[18] Although the Eleventh Circuit has noted, on direct appeal of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[19] the Eleventh Circuit has never expressly recognized a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered the trial fundamentally unfair even though such errors were individually harmless or non-prejudicial, as cognizable under § 2254. *See, e.g.,* Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing

---

[18] Indeed, the Eleventh Circuit noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel." Forrest v. Fla. Dep't of Corr., 2009 WL 2568185, at *4 (11th Cir. Aug. 21, 2009) (unpublished). The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 5 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

[19] *See* United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995)), United States v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996) (citing United States v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)).

Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).[20]

In any event, cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors.  *See* United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist); United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit.  We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero."); *see also* United States v. Hall, 455 F.3d 508, 520 (5th Cir. 2006); Mancuso v. Olivarez, 292 F.3d 939, 957 (9th Cir. 2002) (where there is no single constitutional error, nothing can accumulate to the level of a constitutional violation); United States v. Hardy, 224 F.3d 752, 757 (8th Cir. 2000); Angelone, *supra*; Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998); United States v. Rivera, 900 F.2d 1462, 1471 (10th Cir. 1990) ("[A] cumulative-error analysis should evaluate only the effect of matters determined to be error, not the cumulative effect of non-errors."); United States v. Conteh, 234 Fed. Appx. 374,

---

[20] The law of the other circuit courts of appeals is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas.  The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas.  *See* Williams v. Anderson, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); Fisher v. Angelone, 163 F.3d 835, 852–53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); Wainwright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief.").  The Ninth Circuit recognizes cumulative error claims and expressly recognized Chambers v. Mississippi, 410 U.S. 284 (1973) as the clearly established federal law governing such claims.  *See* Parle v. Runnels, 505 F.3d 922, 928–29 (9th Cir. 2007).  The Tenth Circuit recognizes cumulative error claims and recognized Brecht v. Abrahamson, 507 U.S. 619 (1993) as the clearly established federal law on this issue.  *See* Darks v. Mullin, 327 F.3d 1001, 1018 (10th Cir. 2003).  The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of Strickland.  *See* Williams v. Washington, 59 F.3d 673, 682–84 (7th Cir. 1995); Rodriguez v. Hoke, 928 F.2d 534 (2d Cir. 1991).

2007 WL 1229043 (6th Cir. 2007). Thus, Petitioner must show error with respect to at least two of his individual claims.

In the instant case, as previously discussed, none of the alleged errors of trial counsel that this court substantively reviewed, considered alone, approach the threshold standard of ineffective assistance of counsel. Taken together, their cumulative effect also falls far short of depriving Petitioner of effective assistance of counsel or rendering her trial fundamentally unfair. Furthermore, the remaining claims were procedurally barred. Therefore, Petitioner is not entitled to federal habeas relief on this "cumulative error" claim. *See* Bronstein v. Wainwright, 646 F.2d 1048 (11th Cir. 1981) ("[A] state trial must be so 'fundamentally unfair' as to amount to a denial of due process before federal habeas relief can be appropriately applied.") (internal quotation and citation omitted)); *see also* Ballard v. McNeil, — F. Supp. 2d —, 2011 WL 1103888, at 30–31 (N.D. Fla. Mar. 25, 2011) (same); Rasley, 2011 WL 2358650, at *32–33 (N.D. Fla. Apr. 11, 2011); Whitfield v. McNeil, No. 5:07cv120/RS/EMT, 2010 WL 1930007, at *22–23 (N.D. Fla. Apr. 12, 2010) (unpublished), *Report and Recommendation Adopted at* 2010 WL 1930012 (N.D. Fla. May 13, 2010); Walls v. McNeil, No. 3:06cv237/MCR, 2009 WL 3187066, at **30–31 (N.D. Fla. Sept. 30, 2009) (unpublished).

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is

an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Walter A. McNeil as Respondent.

And it is respectfully **RECOMMENDED**:

1.       That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.       That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 30<u>th</u> day of August 2011.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**